IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 19-cr-307-4 |
| | : | |
| MANUEL LOPEZ AVITIA | : | |
| | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                          **November 27, 2023**

Defendant Manuel Lopez Avitia ("Defendant") filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 528) and thereafter, filed a Motion for Leave to Amend his Pending Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255, Under Fed. R. Civ. P. 15(c) (ECF No. 550). The Government filed a Response in Opposition to Defendant's Motion under 28 U.S.C. § 2255 (ECF No. 544). The Court will grant Defendant's Motion for Leave to Amend his Motion (ECF No. 550), and accordingly, has considered the arguments made therein.[1] For the reasons that follow, the Court will deny Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 528).

**I.      BACKGROUND**

From May 2017 to March 2019, Defendant, a Mexican national, led a nationwide drug trafficking organization which supplied heroin, fentanyl, and other drugs to customers throughout the United States. PSR ¶ 28. During this period, Defendant arranged for at least 27 kilograms of fentanyl to be distributed in the Eastern District of Pennsylvania and in other cities across the

---

[1]      Defendant's Motion to Amend provides detailed additional arguments in support of his Motion under 28 U.S.C. § 2255. Therefore, it is unnecessary for an additional filing to be submitted.

1

country. PSR ¶¶ 46–60, 64–65, 115. Based on this conduct, on September 4, 2019, Defendant was charged in a Superseding Indictment with the following three counts: (Count 1) conspiracy to distribute 400 grams or more of fentanyl; (Count 2) possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and aiding and abetting; and (Count 3) possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 100 grams or more of a mixture and substance containing a detectable amount of heroin and aiding and abetting. ECF No. 34.

On March 6, 2022, Defendant signed a guilty plea agreement in which he agreed to plead guilty to all three counts of the Superseding Indictment. ECF No. 387. The plea agreement provided, among other things, that the Government would make "whatever sentencing recommendation as to imprisonment . . . which the government deems appropriate" and that "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose." *Id.* ¶¶ 2(a), 10. Additionally, the plea agreement stated that "defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and his lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty." *Id.* ¶ 18.

On March 16, 2022, this Court conducted a thorough and extensive colloquy, during which Defendant stated *under oath* that he read, understood, and signed the plea agreement and further understood that the Court had the ability to impose a sentence up to the statutory maximum. ECF No. 385. After the colloquy, this Court concluded that Defendant had entered into the plea agreement knowingly and voluntarily and accepted Defendant's plea of guilty to Counts One through Three.

Because of his role as the leader of the conspiracy, Defendant received a four-point offense level enhancement under the Sentencing Guidelines. PSR ¶ 121. Defendant also received two, two-point offense level enhancements for: (1) maintaining a premises for the purpose of drug trafficking; and (2) making a credible threat of violence toward a co-conspirator who stole drugs and money. PSR ¶¶ 117–118. Due to these enhancements and the large quantity of drugs involved, Defendant's advisory guideline range was 324 to 405 months' imprisonment. PSR ¶ 170. On August 31, 2022, this Court sentenced Defendant to 181 months of imprisonment and additional penalties, thus varying downward from the low-end of the guideline range by almost 12 years based on consideration of the Section 3553(a) factors. ECF No. 440.

Defendant now brings this *pro se* collateral attack under 28 U.S.C. § 2255 arguing that his defense counsel was ineffective in violation of the Sixth Amendment because: (1) counsel "insured that he could negotiate a sentence of no more than 10-years" and Defendant entered into the plea agreement with the understanding that he would receive, at most, a 10-year sentence; (2) counsel "misinformed him" about the applicability of sentencing enhancements that were included in his advisory sentencing guidelines range; and (3) counsel did not inform the Court that Defendant as a deportable alien was "Eligible For A *United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994) Departure Variance." *See* ECF Nos. 528, 550. On September 21, 2023, the Government filed a response in opposition. ECF No. 544. Accordingly, Defendant's Motion, as amended, is ripe for consideration.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255, "a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded

3

the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting 28 U.S.C. § 2255(a)) (internal quotation marks omitted). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citation omitted).

In evaluating requests for relief under Section 2255, courts "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (internal quotation marks and citations omitted). When the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," courts need not hold an evidentiary hearing. *Id.*

### III.   DISCUSSION

Defendant's Motion argues that his counsel was ineffective because counsel "insured that he could negotiate a sentence of no more than 10-years" and Defendant entered into the plea agreement with the understanding that he would receive, at most, a 10-year sentence; (2) counsel "misinformed him" about the applicability of sentencing enhancements that were included in his advisory sentencing guidelines range; and (3) counsel did not inform the Court that Defendant "As a Deportable Defendant [] Was Eligible for A *United States* v. *Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994) Departure Variance." ECF Nos. 528, 550. For the reasons set forth below, this Court finds Defendant's claims are without merit based on the record before the Court, and Defendant is therefore not entitled to an evidentiary hearing.

A.  **Legal Standard Applicable to an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong, a defendant must show that counsel's performance was deficient—meaning a defendant must show performance of counsel "fell below an objective standard of reasonableness under prevailing professional norms." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted); *see also Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005); *Jansen v. United States*, 369 F.3d 237, 243 (3d Cir. 2004). In analyzing this prong "[a] strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Mitchell*, No. CR 15-0021-6, 2017 WL 4838841, at *4 (E.D. Pa. Oct. 25, 2017) (citing *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989)). "It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) (citation omitted).

Under the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant. *Jacobs*, 395 F.3d at 105. To prove prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"The burden is on the defendant in a § 2255 motion to prove his claim of ineffective assistance of counsel." *Mitchell*, 2017 WL 4838841, at *4 (citing *Strickland*, 466 U.S. at 687).

### B. Counsel's Alleged Representation that Defendant Would Receive at Most a 10-Year Sentence

Defendant first argues that he would not have entered a plea agreement but for his attorney, Coley O. Reynolds' advice that by signing the plea agreement Defendant would receive at most a 10-year sentence pursuant to the plea. ECF No. 528 at 5. This argument is clearly frivolous based on the record.

First, Mr. Reynolds did not represent Defendant when Defendant signed the plea agreement on March 6, 2022 nor when he formally pled guilty on March 16, 2022. Rather, the record shows that Mr. Reynolds represented Defendant during a hearing on December 10, 2021, where Mr. Reynolds indicated they are awaiting a written plea agreement from the Government and that there had been a "soft number talked about."[2] ECF No. 347 at 6:5–6; 8:18–19. However, less than one week later, Defendant decided to hire a new attorney, Mr. Carlos Martir, and Mr. Reynolds was terminated as counsel of record for Defendant after a hearing on December 21, 2021. ECF No. 533. At the time Defendant decided to switch attorneys, there had been no plea agreement extended to Defendant. *See* ECF No. 544 at 5. It was only after Mr. Martir became counsel of record that the Government extended a plea agreement to Defendant. *Id.* Therefore, any argument by Defendant that he entered into the plea agreement based on Mr. Reynolds' advice that if he pled guilty his sentence would be less than 10 years is contradicted by the record since Mr. Reynolds did not represent Defendant when he entered into the plea agreement.

---

[2]    Upon the representation that there had been a soft number talked about, the Court immediately cautioned that before the Government could extend a plea agreement, the prosecutor appearing at the hearing "has to go up through the chain of command to make sure it gets approved because somebody along that chain of command might say hey, we're not doing this." ECF No. 374 at 10–11. Moreover, as will be indicated *infra*, the plea agreement that was ultimately extended contained *no agreement or recommendation* as to what sentence Defendant would receive and permitted the Court to sentence Defendant up to the statutory maximum.

Furthermore, contrary to Defendant's assertions, the record reveals that his plea was knowingly and voluntarily entered. First, the plea agreement plainly states that Defendant could receive any sentence up to the statutory maximum sentence, which was life imprisonment, while also noting that there is a mandatory minimum sentence of 10 years of imprisonment. ECF No. 387. The plea agreement also indicates that at the time of sentencing the Government will make whatever sentencing recommendation it deems appropriate. *Id.* Additionally, the plea agreement provides that "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose" and states that Defendant and his lawyer, Mr. Martir, "have fully discussed this plea agreement" and "[i]t is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement." *Id.* Defendant signed this plea agreement and the accompanying Acknowledgment of Rights form on March 6, 2022. *Id.* Accordingly, the plea agreement clearly *does not* provide that Defendant will receive a sentence of 10 years if he pleads guilty.

Moreover, at the guilty plea hearing March 16, 2022, Defendant was placed under oath and subsequently made numerous statements that contradict his arguments that he was "insured" a sentence of no more than 10 years by his counsel. The Court will highlight a few of those contradictory statements. First, Defendant stated that he voluntarily signed the plea agreement after he had the opportunity to read and discuss it with his lawyer, Mr. Martir. ECF No. 534 at 10–11. Second, Defendant acknowledged that he understood the terms of the plea agreement and that the plea agreement represents the full understanding Defendant has with the Government. *Id.* at 11. Third, Defendant answered "no" when asked both whether "anyone made any promises or assurances to you, Mr. Avitia, that is not in the plea agreement to persuade you to accept this agreement" and "has anyone attempted in any way to force you to plead guilty." *Id.* at 16–17.

Fourth, Defendant answered "yes, sir" when asked "do you understand that on the basis of the guilty plea, you could receive a sentence up to the maximum penalty by law." *Id.* at 20. Fifth, Defendant stated he understood after the Court recited the applicable maximum penalties and mandatory minimums. *Id.* at 20–23. Sixth, Defendant indicated that he understood that "no one can guarantee what sentence [the Court] will impose" and that "[i]f [the Court] impose[d] a more severe sentence than you expect or which . . . someone told you [the Court] was likely to impose, you will not be entitled to withdraw any guilty plea." *Id.* at 23. These statements clearly demonstrate that Defendant understood the terms of the plea agreement and directly refute any argument that his understanding was that he would receive a sentence of 10 years or less if he pled guilty pursuant to the plea agreement.

In sum, the Court finds Defendant's argument to be frivolous based on the record. The record, including Defendant's own sworn statements clearly indicate that Defendant understood the terms of the plea agreement, including the maximum sentence he could receive if he pled guilty. Accordingly, as Defendant's own sworn statements contradict his ineffectiveness argument, this Court finds his allegation that he was promised a sentence of 10 years or less if he pled guilty to be frivolous.

   **C.**  **Counsel's Alleged Misinformation Regarding Certain Guideline Calculations**

Defendant also argues that counsel was ineffective for misinforming him regarding certain enhancements that were used in calculating Defendant's advisory sentencing guidelines range. ECF No. 528 at 4. Specifically, Defendant received a four-point offense level enhancement because of his role as the leader of the conspiracy, a two-point offense level enhancement for maintaining a premise for the purpose of drug trafficking, and a two-point offense level

8

enhancement for making a credible threat of violence toward a co-conspirator who stole drugs and money. PSR ¶¶ 117–118; 121.

At the outset, the Court notes that the record strongly suggests that Defendant was aware that he was subject to the three sentencing enhancements. First, the Superseding Indictment alleges that Defendant was "the leader of a large-scale drug organization," "directed, employed, and paid" numerous co-conspirators to carry out the organization's activities, and "maintained stash houses to store and safeguard kilogram quantities of fentanyl." ECF No. 34 ¶¶ 1–4. Additionally, at the March 16, 2022 guilty plea hearing, Defendant stated under oath that he had read the Superseding Indictment and reviewed it with his attorney. ECF No. 534 at 8–9. Also at that hearing, Defendant had no objection to the Government's written or oral recitation of the factual basis of the plea, which similarly stated that Defendant was the "highest-ranking member" of the conspiracy, directed his co-conspirators to carry out numerous transactions of large quantities of fentanyl, and threatened a co-conspirator who stole drugs and money. *Id.* at 37–46; ECF No. 386 at 4–10. Moreover, prior to sentencing, the Probation Office sent to Defendant a draft and final Presentence Investigation Report ("PSR"), which included the three enhancements; however, Defendant did not object to either the draft or final PSR in advance of sentencing or at sentencing. Finally, at the sentencing, Defendant told the Court that he read the final PSR and discussed it with his attorney. ECF No. 535 at 6. Thus, the record strongly suggests that Defendant was aware and understood his guideline calculations.

Nevertheless, as this Court must accept Defendant's contentions as true, the Court will lay out how this so-called misinformation could still not support an ineffective assistance of counsel claim as Defendant cannot show that counsel's performance "fell below an objective standard of reasonableness." *See Wetzel*, 724 F.3d at 375.

The Third Circuit has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where [] an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases). "The law does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior." *Id.* (quoting *United States v. Mustafa*, 238 F.3d 485, 492 n.5 (3d Cir. 2001)). Thus, "all that the law requires is that the defendant be informed of his/her exposure in pleading guilty." *Shedrick*, 493 F.3d at 299 (quoting *Mustafa*, 238 F.3d at 492 n.5). Thus, "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *Shedrick*, 493 at 299. Here, as described in detail above, the written plea agreement and this Court's guilty plea colloquy clearly informed Defendant of his exposure in pleading guilty. Accordingly, any erroneous sentencing information allegedly provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated Defendant's potential sentence. Thus, any alleged error by defense counsel in informing Defendant regarding his sentencing calculations was erased by this Court's colloquy, and Defendant suffered no prejudice.

      **D.**      **Counsel's Alleged Failure to Object to the Drug Weight and Certain Sentencing Enhancements**

Turning to Defendant's arguments concerning specific guideline calculations, Defendant argues that counsel was ineffective for: (1) not properly challenging the drug quantity attributable to him; (2) not challenging the two-point enhancement for making a credible threat of violence toward a co-conspirator; and (3) not challenging the four-point enhancement for being an organizer or leader of criminal activity involving five or more participants. ECF Nos. 528, 550.

First, as to the drug quantity attributable to Defendant, in his plea Defendant specifically stipulated that: "at least 30,000 to 90,000 kilograms of converted drug weight was distributed or possessed with the intent to distribute in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3." ECF No. 387 at 6. As the amount specified within the PSR and adopted by this Court at sentencing was 68,900 kilograms, the amount was within the parties' stipulated range. Accordingly, Defendant knew of his exposure before pleading guilty and agreed to the drug quantity when pleading guilty. Thus, Defendant cannot show that defense counsel acted professionally unreasonable by failing to object to a drug quantity amount at sentencing that was stipulated to by the parties in Defendant's plea agreement.

Defendant also argues that defense counsel was ineffective for not challenging the two-level enhancement for making a credible threat of violence toward a co-conspirator who stole drugs and money. ECF No. 550 at 8–10. Specifically, Defendant argues that there is no evidence that he actually threatened any individual. *Id.* However, as detailed in the record, in June 2018, Defendant was heard on wiretap intercepts threatening the life of Nino-Meyer and attempting to determine Nino-Meyer's whereabouts after he stole a large quantity of drugs and cash from Defendant. *See, e.g.*, PSR ¶ 117. Therefore, the evidence does support the application of this enhancement and does not reveal any basis for which counsel could have challenged the application of this enhancement. Accordingly, defense counsel was not unreasonable in failing to challenge the application of this enhancement and Defendant cannot show that defense counsel's failure to challenge this application prejudiced him.

Defendant further argues that defense counsel was ineffective for not challenging the four-level enhancement for being an organizer or leader of a criminal activity involving five or more participants. ECF No. 550 at 10–11. Defendant argues that the Government did not establish that he was the leader of five or more individuals and accordingly, counsel was ineffective by not challenging the application of this enhancement. *Id.* But Defendant pled guilty to crimes that involved twelve other co-defendants, meaning the criminal activity to which he pled guilty undoubtedly involved more than five participants. Therefore, Defendant has not shown that defense counsel was unreasonable in failing to challenge this enhancement and that such a failure prejudiced Defendant.

As Defendant has not shown that the enhancements did not apply to him, he has failed to show that his representation fell below an objective standard of reasonableness and resulted in a miscarriage of justice.

### E. Counsel's Alleged Failure to Make the Court Aware of Defendant's Non-Citizen Status

In his Motion to Amend his Section 2255 Motion, Defendant argues that counsel was ineffective because he did not inform the Court that Defendant "As a Deportable Defendant [] Was Eligible for A *United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994) Departure Variance." ECF No. 550 at 12–16. Defendant claims that the collateral consequences of his deportable non-citizen status include his ineligibility for benefits under programs, such as the Residential Drug Abuse Treatment Program ("RDAP"), which therefore mean Defendant will spend more time in prison compared to equally situated American citizens in violation of the Equal Protection Clause.[3] ECF No. 550 at 14–15.  This argument is without merit.

---

[3] The Court notes that Defendant's arguments concerning programs available to Defendant while incarcerated appear to be, in actuality, based on the execution of his sentence, which are not

*United States v. Smith*, which was decided before *United States v. Booker*, 543 U.S. 220 (2005), held that "a downward departure [from the Guidelines range] may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." *Smith*, 27 F.3d at 655. To begin, *Smith* is not binding on this Court, so it was reasonable for defense counsel not to argue for a departure based on a non-controlling case. *See Manzo v. United States*, No. 08-454, 2009 WL 2365989, at *3–4 (D.N.J. July 31, 2009) (finding petitioner's argument that his attorney was ineffective for failing to request a downward departure on the basis of his deportable alien status without merit); *see also Arroyo-Angulo v. United States*, 961 F. Supp. 698, 702 (D.N.J. 1997) (denying motion for a downward departure based upon defendant's alien status).

Moreover, although defense counsel did not specifically cite *Smith*, he did argue that Defendant's deportable alien status was a mitigating factor in Defendant's sentencing memorandum and while orally advocating at sentencing. ECF No. 426 at 3; ECF No. 535 at 20. Likewise, this Court, during its consideration of the Section 3553(a) factors at sentencing, specifically noted that Defendant deportable alien status was a mitigating factor. *See* ECF No. 535 at 13. Accordingly, Defendant's argument that counsel was ineffective for not making a *Smith* argument is meritless.

F.   **Certificate of Appealability**

"When a district court issues a final order denying a § 2255 motion, the court must also determine whether a certificate of appealability . . . should issue." *United States v. Kastory*, No. 2:22-CR-142, 2023 WL 5901646, at *6 (W.D. Pa. Sept. 11, 2023) (citation omitted). Based upon

---

cognizable under Section 2255. To the extent Defendant is actually challenging the conditions of his confinement, he should instead seek proper redress by filing a motion pursuant to 28 U.S.C. § 2241.

the motion and files and records of this case, and for the reasons set forth herein, the Court finds that Defendant has not shown a substantial denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 528) will be denied and a certificate of appealability will not issue. An appropriate Order will follow.

**BY THE COURT:**

*/s/ Chad F. Kenney*

**CHAD F. KENNEY, JUDGE**

Cc:    Pro se

U.S. Attorney